UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GENTEK, INC.,

    Plaintiff,

v.                                            CASE NO: 8:08-cv-2315-T-26TGW

TDK-LAMBDA AMERICAS, INC. f/k/a
Lambda Americas, Inc. f/k/a Electronic
Measurements, Inc.,

    Defendant.
    _____/

## **O R D E R**

Before the Court are cross motions for summary judgment: Defendant's Motion for Summary Judgment and Statement of Undisputed Facts (Dkts. 33 & 34), Plaintiff's Response and Statement of Undisputed Facts (Dkts. 41 & 42), Defendant's Reply (Dkt. 45), Plaintiff's Motion for Summary Judgment (Dkts. 35 & 38), and Defendant's Response. (Dkt. 40). After careful consideration of the motions and the submissions of the parties, the Court concludes that the Plaintiff's motion should be denied in part and granted in part and that the Defendant's motion should be denied.

## **PARTIES**

Defendant TDK-Lambda Americas, Inc. (Lambda) is located in New Jersey and is in the business of manufacturing products used in the space program by NASA.

Specifically, Lambda produces high-power, programmable AC-DC power supplies. These products are sold exclusively through independent representatives. Plaintiff GenTek, Inc. (GenTek) is located in Tampa, Florida, and was the sales representative for Lambda for a ten-year period from 1998 through April 2, 2008 at 11:59 p.m. This action involves an order that was placed in April 2008 by United Space Alliance, LLC, at NASA (NASA/USA) for 28 units of power supplies from Lambda. NASA/USA is located at the Kennedy Space Center and orders various supplies for use by NASA.

**PERTINENT FACTS**

From January 16, 1998, through April 2, 2008, a "Sales Representative Agreement" (the agreement) was in place between GenTek and Lambda pursuant to which GenTek was entitled to certain commissions. (Dkt. 42, Exh. 1). Lambda, through GenTek, secured a purchase of 28 units of power supplies from NASA/USA at some point in April 2008. Lambda was paid for the delivery of the power supplies, and now GenTek claims its right to a commission on that purchase. The issue is whether the sales order for the power supplies from Lambda was placed or made under the terms defined in the agreement on or before April 2, 2008. If it was, then GenTek is due the commission.

*The Sales Representative Agreement*

The agreement provides that GenTek will solicit "orders" for the purchase of Lambda's product. (Dkt. 42, Exh. 1 at p. 1). An order is defined in the agreement as "any commitment to purchase product from [Lambda] that is accepted by [Lambda] and calls for shipment into [GenTek's] territory." (Dkt. 42, Exh. 1 at p. 3). Pursuant to the

agreement, GenTek would receive a commission based on the commission policy attached to the agreement. (Dkt. 42, Exh. 1, "Commission Policy, Revised Oct. 15, 1994). The commission for the purchase of 25-49 items is 9% of the net sale. The agreement and the commission policy also leave open the possibility of a negotiated commission: "Price negotiated business may carry a different commission rate." (Dkt. 42, Exh. 1 "Commission Policy, Revised Oct. 15, 1994). The agreement provides that it shall be construed according to the laws of New Jersey. (Dkt. 42, Exh. 1 at p. 3).

With respect to termination, the agreement provides that the party terminating must give thirty days' prior notice. In accordance with the terms, Lambda gave notice of termination to GenTek by letter dated March 3, 2008, "effective April 2, 2008." (Dkt. 32, Exh. B). Thus, the agreement ended at 11:59 p.m. April 2, 2008. The agreement also provides that "[u]pon termination, commissions shall be paid on purchase orders placed up to the final date of written termination." (Dkt. 42, Exh. 1 at p. 3, para. 6). The letter of termination states that Lambda "will pay commissions on any orders booked before that date in accordance with the Agreement." (Dkt. 32, Exh. B).

### *The Sale*

On March 28, 2008, NASA/USA issued an "invitation to quote" for NASA/USA to purchase 28 power supplies. (Dkt. 42, Exh. 7). On March 31, 2008, GenTek, on behalf of Lambda, submitted a Lambda quotation to Deborah Trask, as subcontract administrator for NASA/USA, for those parts labeled "Quotation 5340A." (Dkt. 42, Exh. 6, Depo. of Trask, pp. 13-14; Exh. 8). On that same day, additional e-mails were

exchanged between Ms. Trask and GenTek's Phil Winfield, on behalf of Lambda, regarding a premium charge for expedited delivery. (Dkt. 34, Comp. Exh. C).

On April 1, 2008, Ms. Trask responded to John Breickner as product manager of the relevant product at Lambda stating:

> The proposal as outlined below is acceptable to my requestor. Please submit a new quote based on this pricing. On your new quote please break down to the quantities and what the lead times will be.

(Dkt. 34, Comp. Exh. B; Dkt. 42, Exh. 9). Ms. Trask testified at her deposition that the "acceptable" proposal as referred to in this e-mail was the March 31st e-mail from Mr. Winfield, which could have meant the formal quote or just using Mr. Winfield's terminology. (Dkt. 42, Exh. 6, Depo. of Trask at pp. 15-17). Although she testified that the purchase order is the mechanism which conveys that the purchase is acceptable to NASA/USA,[1] she gave conflicting testimony that the purchase order confirmed or memorialized an already existing agreement to purchase the information contained in the purchase order. (Dkt. 42, Exh. 6, Depo. of Trask at pp. 102-103).

As requested, Mr. Breickner of Lambda submitted a new quote on the morning of April 1, 2008, which provided in pertinent part:

> In an effort to help you finalize the order placement today, I have revised the attached quotation to show completing 12 weeks ARO.

---

[1] See docket 42, Exh. 6, Depo. of Trask at pp. 17-20, 22, 56, 61, 70-71, 100-101, 106.

> If at all possible, please confirm the order today to Bonnie's attention. Be sure to Reference our Quotation 5340B in your order.

(Dkt. 42, Exh. 10). In the afternoon on April 1, Ms. Trask sent Mr. Breickner the following e-mail:

> I talked to Phil [of GenTek], I won't be able to get you the actual purchase order today but can give you the purchase order number which will be 6000151723. The reason for the delay is th[at] the purchase requisition has to go through several internal departments for approval (it will be approved, this is just the course it has to go) and its not in my worklist yet. Also, after I complete the purchase order it has to go through our Compliance Dept. Due to the cost involved (they basically look to see if I applied all the terms and conditions correct for the order).

(Dkt. 42, Exh. 11). With respect to the requirement of sending the purchase order through the compliance department, Ms. Trask testified that the compliance department review was an administrative step to insure that she had not made any mistakes in the form and was not an opportunity to change the terms and conditions of the purchase order. (Dkt. 42, Exh. 6, Depo. of Trask at pp. 39-40, 103-104).

The next day, April 2, 2008, Ms. Trask e-mailed Mr. Breickner of Lambda that "the purchase requisition has finally made it through all the channels and I'm down to justifying the pricing paid and actually building the purchase order." (Dkt. 42, Exh. 12). After NASA/USA received the "most-favored customer" letter from Lambda that same day,[2] Mr Winfield of GenTek confirmed in an e-mail to Mr. Breickner as follows:

---

[2] See docket 42 at Exhibit 12.

> Your letter completes what the buyer, Debbie, needed. On Monday, we sent Debbie a competing quote. She needed your letter certifying your offer as "most favorable." Along with our quote, she has what she needs.
>
> P.s. She says that she will issue the completed P.O. tomorrow, which will have the same number that I sent you on Monday.

(Dkt. 42, Exh. 13). Again, Ms. Trask gave testimony that when she agreed that by April 2d, all that remained was the paperwork and that she had communicated that NASA/USA was committed to Lambda on April 2d minus the paperwork. (Dkt. 42, Exh. 6, Depo. of Trask at pp. 37-38). This testimony conflicts with that given earlier in her deposition that the purchase order actually "commits" the order. (Dkt. 42, Exh. 6, Depo. of Trask at pp. 17-19). Danny Wilson, the president of GenTek, testified at his deposition that he believed an order existed before the time of termination because the parties had a commitment to purchase pursuant to their agreement. (Dkt. 32, Exh. D, Depo. of Wilson at pp. 27-31).[3]

On April 4, 2008, NASA/USA issued the written purchase order to Lambda, which was numbered 6000151780.[4] (Dkt. 32, Exh. E). Although the actual purchase order number was different from the one Ms. Trask initially provided on April 1, 2008, she

---

[3] To the extent Lambda asserts that the fact that this order is a "rated order with a DPAS of DO C9," Raymond Owen, the vice-president of sales and marketing of Lambda, testified that Lambda had no system to ensure that a rated order is given any priority over any other order. (Dkt. 42, Exh. 3, Depo. of Owen at p. 140).

[4] The original purchase order number given to Lambda was 6000151723. (Dkt. 42, Exh. 11).

-6-

testified that the purchase order was consistent with the communications exchanged on April 1 and 2, 2008. (Dkt. 42, Exh. 6, Depo. of Trask at pp. 96-97). Mr. Breickner confirmed at his deposition that the purchase order did not contain any different terms than Lambda's quotation dated April 1, 2008. (Dkt. 42, Exh. 4, Depo. of Breickner at pp. 50-52). On April 10, 2008, Lambda sent a "Sales Order Acknowledgement" to NASA/USA, and delivered the power supplies to NASA/USA and was paid $279,792.00. (Dkt. 42, Exh. 14, Amended Responses to First Request for Admission at paras. 41 & 42). Lambda admitted that it did not pay the new sales representative a commission on the purchase at issue. (Dkt. 42, Exh. 14, Amended Responses to First Request for Admission at para. 48).

## ANALYSIS

Defendant Lambda requests summary judgment on all four counts of the complaint: (1) breach of the agreement; (2) violation of the New Jersey Sales Representatives' Rights Law; (3) unjust enrichment, alternatively; and (4) quantum meruit, alternatively. Plaintiff GenTek requests partial summary judgment on count I and on all but one of Defendant's 42 affirmative defenses.

### *Choice of Law*

In this action based on diversity jurisdiction, the agreement contains a choice-of-law provision designating New Jersey law as the governing law for construction of the agreement. Generally, in a diversity case, the federal court should apply the substantive law of the forum state. See Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306,

1313 n. 9 (11th Cir. 2009). Florida will defer to the choice-of-law provision in the contract unless the chosen forum contravenes strong public policy. See Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1341 (11th Cir. 2005) (citing Mazzoni Farms, Inc. v. E.I. Dupont de Nemours & Co., 761 So.2d 306, 311 (Fla. 2000)). The parties do not disagree with the fact that New Jersey law applies; they seem to disagree with, in count II, which New Jersey law applies— the New Jersey Sales Act or the New Jersey common law or case law applicable to contracts. In any event, New Jersey law governs the agreement.

### *Breach of the Agreement*

Count I seeks damages and other relief for breach of the agreement and Lambda's failure to pay GenTek the commission due on the NASA/USA order. Lambda takes the position that because the purchase order was issued beyond the date of termination, there is no commission due GenTek. Lambda asserts that the April 4th issuance of the purchase order by NASA/USA, even though the terms of the purchase order were consistent with all previous communications among Lambda, GenTek and NASA/USA, falls outside the due date according to the agreement, and the commission was therefore not due GenTek as the past territorial representative. GenTek asserts that if this Court finds that it is due a commission, then there is no genuine issue of fact as to the amount of the commission. GenTek argues that according to the agreement, the commission due should be nine

percent of the $279,792.00 purchase price.[5]  Lambda counters that this particular sale is subject, at most, to a 5 percent commission rate, if in fact it is deemed to be compensable under the terms of the agreement, because this sale constituted a "negotiated business" as that term is used in the agreement.

Under New Jersey law, the interpretation and construction of a contract is a matter of law for the court to decide when the terms of the contract are clear and unambiguous. See Traverso v. Guthaim, 2009 WL 4892605 at *5 (N.J. Super. A.D. Dec, 21, 2009) (unpublished opinion) (citing Cedar Ridge Trailer Sales, Inc. v. National Cmty. Bank of N.J., 711 A.2d 338, 343 (N.J. Super. Ct. App.Div. 1998)).  If a term is ambiguous, then the meaning of that term is a question of fact for the jury.  See Great Atl. & Pac. Tea Co., Inc. v. Checchio, 762 A.2d 1057, 1061-62 (N.J. Super. Ct. App.Div. 2000) (citing Michaels v. Brookchester, Inc., 26 N.J. 379, 387, 140 A.2d 199 (1958)).  Moreover, a court must not, on summary judgment, limit the parties' meanings to a narrow interpretation of that term.  See Grow Co., Inc. v. Chokshi, 959 A.2d 252, 271 (N.J. Super. Ct. App. Div. 2008).  Where the meaning of a contract term is unclear and depends on disputed extraneous testimony, the interpretation should be left to the finder of fact. See DeerhurstEstates v. Meadow Homes, Inc., 165 A.2d 543, 552 (N.J. Super. Ct. App. Div. 1961).

---

[5]  GenTek also moves for summary judgment on 41 of Lambda's 42 affirmative defenses.  Lambda, in its response, voluntarily withdrew affirmative defenses 2, 25, 37, 38, 40, and 41.

The parties disagree over the meaning of the terms of the agreement, particularly regarding what constitutes an "order," or more specifically, a "commitment" to purchase. Lambda argues that the term "order" as used in the agreement requires both a commitment by the customer, NASA/USA, and an acceptance by Lambda.[6] Lambda focuses on the necessity of a written acceptance by Lambda, which it argues would be the written acknowledgment it sent to NASA/USA on April 10, 2008, in response to the April 4th purchase order. Assuming that Lambda is correct that an "order" requires both a commitment and an acceptance, the testimony about whether a commitment was made on or before the date of termination is contradictory. Relying on the testimony of Ms. Trask to support Lambda's position that the commitment was the purchase order, Lambda overlooks, however, the genuine issue of material fact created by Ms. Trask's seemingly contradictory testimony that the agreement existed before the memorialization of the commitment in the purchase order. Likewise, the term "acceptance" could mean the written quote submitted by Lambda on April 1st, rather than the written acknowledgment of April 10th in response to the purchase order. Given the disputed and contradictory testimony in this record, the resolution of whether a breach of the agreement occurred is

---

[6] Lambda refers to paragraph of 8 of the agreement in which "order" is defined as "any commitment to purchase product from [Lambda] that is accepted by [Lambda] and call for shipment into [GenTek's] territory."

best left for a proceeding other than summary judgment.[7]  See Delgado v. Lockheed-Georgia Co., 815 F.2d 641, 645 n. 3 (11th Cir. 1987).

The Court further finds that a genuine issue of material fact exists with respect to what commission, if any, was owed to GenTek.  Apart from the meaning of certain terms in the agreement, the testimony of Raymond Owen shows that GenTek never agreed to a five percent commission, and nothing in the record shows that the parties negotiated the commission.  (Dkt. 42, Exh. 3, Depo. of Owen at pp. 98-100).  The testimony regarding the parties' course of conduct, on the other hand, militates against a finding that the commission policy attached to the agreement controlled in this situation at issue in this proceeding.  Consequently, summary judgment is not the appropriate context within which to resolve the many disputed material facts.

*Violation of the New Jersey Sales Act*

Lambda vehemently argues that application of the amendments to the New Jersey Sales Act to the agreement would constitute an unlawful retroactive application, one not intended to apply to contracts entered into long before the effective date of the amendments to the statute.  GenTek asserts that the acts of termination of the agreement,

---

[7] Lambda additionally asserts that the fact that the order was a DO rated order governed by the Defense Production Act, 50 U.S.C. § 2061 *et seq*. (DPA) and the Defense Priorities and Allocations System, 15 C.F.R. Part 700 (DPAS), required compliance with these federal regulations, thereby requiring the "commitment" and the "acceptance" of the sale to be in writing.  As noted by GenTek, the agreement is between GenTek and Lambda and nothing within that agreement appears to mandate terms applicable to Lambda and its customers.

which occurred after the effective date of the amendments, permit the statute to be applied prospectively only. At first blush, the well-established presumption against retroactive application of a statutory amendment, warrants scrutinizing the New Jersey legislature's intent and other factors considered under New Jersey law. See Olkusz v. Brown, 951 A.2d 1069, 1073 (N.J. Super. Ct. App. Div. 2008).[8] In any event, the record before this Court is insufficient to resolve the application of the New Jersey Sales Act, much less the interplay, if any, of the DPA and the DPAS with the agreement here between a principal and its sales representative. The parties have provided no authority construing the statute at hand. These matters will be better addressed in the trial brief to be submitted in accordance with the Case Management and Scheduling Order.[9]

## *Unjust Enrichment/Quantum Meruit*

Both the unjust enrichment claim and the quantum meruit claims are pled in the alternative to the breach of contract claim. Although these claims may be disposed of in summary judgment proceedings, the Court finds that GenTek should have the opportunity to prove its equitable claims should Lambda be successful on its claim that the written agreement between the parties is unenforceable or in some other way invalid. See Amend v. 485 Properties, LLC, 401 F.3d 1255, 1260 (11th Cir. 2005); Hurst v. Dezer/Reyes

---

[8] Interestingly, a different panel of the same court disagreed with Olkusz's rationale and held that the particular statute under review did apply retroactively. See Hand v. Philadelphia Ins. Co., 973 A.2d 973, 978 (N.J. Super. Ct. App.Div. 2009).

[9] See docket 7.

Corp., 82 F.3d 232, 235 (8th Cir. 1996). Accordingly, a determination regarding these alternative claims would be premature at this juncture.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (Dkts. 33) is **DENIED**.

(2) Plaintiff's Motion for Summary Judgment (Dkt. 35) is **DENIED in part and GRANTED in part.** Affirmative defenses numbered 2, 25, 37, 38, 40, and 41 are hereby stricken.

**DONE AND ORDERED** at Tampa, Florida, on February 18, 2010.

    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record